IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| ANDREA M. GRISAFE PONT, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 07-0078-CV-W-ODS-SSA |
| | ) |
| MICHAEL J. ASTRUE,[1] | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

### ORDER AND OPINION AFFIRMING COMMISSIONER'S FINAL DECISION ORDERING CESSATION OF BENEFITS

This is an appeal of the Commissioner's final decision terminating Plaintiff's Disability Insurance benefits. After reviewing the record and the parties' arguments, the Court affirms the Commissioner's decision.

### I. BACKGROUND

Plaintiff was born in 1967, has a high school education, and has a relevant work history as a production worker and cashier. Plaintiff filed an application for disability benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 et seq. Plaintiff was granted disability benefits upon an initial determination on July 31, 2000, finding a disability onset date of April 1, 1998, based on congenital left hip dysplasia. In July 2003, the Social Security Administration performed a continuing disability review, and pursuant to an initial determination dated December 8, 2003, the Administration found Plaintiff had experienced medical improvement, and therefore, that her disability had ceased. Plaintiff requested reconsideration, and the cessation finding was affirmed in a determination issued on May 18, 2004. Plaintiff appealed, and on December 6, 2005, a hearing was held before the Administrative Law Judge ("ALJ"). On December 30, 2005,

---

[1] On February 12, 2007, Michael J. Astrue became the Commissioner of Social Security and should, therefore, be substituted as the Defendant in this case. Fed. R. Civ. P. 25(d)(1).

the ALJ issued his decision finding that Plaintiff was not disabled because of medical improvements related to her ability to work. Plaintiff sought review of the ALJ's decision with the Appeals Council, which denied Plaintiff's request on July 21, 2006. The decision of the ALJ remains the final decision of the Commissioner relevant to this appeal. Plaintiff timely filed her Complaint in this Court on February 13, 2007.

***A. Medical Records***

Plaintiff underwent left total hip replacement surgery on March 31, 2003. According to her treatment notes, Plaintiff tolerated the procedure well. Plaintiff showed substantial progressive interval improvements in range of motion, motor strength, and ambulation in follow-up examinations and rehabilitation therapy. Plaintiff reported left hip pain on May 13, 2003, but orthopedic specialist, Robert C. Gardiner, M.D., found her to be doing well, with the examination showing equal leg lengths and full range of motion. On August 26, 2003, Plaintiff told Dr. Gardiner that she was having some left groin pain. The examination showed slight tenderness in the hip flexor and the iliopsoas, but full range of motion. Dr. Gardiner assessed probable tendonitis (Tr. 198-209, 211, 214, 216).

At the request of the Social Security Administration, Plaintiff underwent a consultative medical examination with Stephen Hendler, M.D., on November 18, 2003. She informed Dr. Hendler that her overall pain had been reduced by her hip replacement surgery. She also told Dr. Hendler she was twelve weeks pregnant. Additionally, she stated she had been working part-time at a Blockbuster video store in 2003 before her surgery. Plaintiff's examination revealed normal cognitive, emotional, and mental functioning. She had full muscle strength in the bilateral upper and lower extremities, essentially normal musculoskeletal range of motion except in the left hip, and a mild gait disturbance. Dr. Hendler also found that Plaintiff showed signs of symptom magnification. Dr. Hendler concluded that Plaintiff was capable of standing and/or walking for up to two hours per workday and that her abilities should increase further overtime, especially after her pregnancy was completed (Tr. 227-230).

Plaintiff met with Timothy M. Badwey, M.D., for evaluation of her right ankle on August 26, 2004. She told him that she continued to experience pain in her right ankle

since her hip replacement surgery which was exacerbated by going up and down stairs. Dr. Badwey's examination of Plaintiff's ankle showed only slightly restricted motion and no redness, warmth, or induration about the foot or ankle. There was no instability with anterior drawer or inversion testing; she had some weakness with eversion against resistance. Plaintiff was tender to palpitation over the anterior lateral joint line of the ankle. Dr. Badwey recommended she undergo ankle arthroscopy which Plaintiff elected to postpone (Tr. 300).

On March 8, 2005, Plaintiff saw Dr. Divelbiss complaining of right hand pain. Examination of Plaintiff's hands revealed normal active range of motion, alignment, stability, and motor tone. Plaintiff had tenderness over the digital extensors and intrinsic tendons over the dorsum of the hand and index, long, and ring fingers and also over the wrist and digital flexors in the forearm. Dr. Divelbiss assessed tendonitis and recommended physical therapy, over-the-counter anti-inflammatory medication, and a wrist splint. On April 5, 2005, Dr. Divelbiss diagnosed Plainitff with left ring finger trigger finger and administered an injection which improved her symptoms. On June 28, 2005, Plaintiff experienced trigger finger in another finger, which also was treated with an injection (Tr. 296-299).

Finally, Stephen Nolker, M.D., Plaintiff's family physician, provided two statements to the Agency on June 2005 and December 2005. In both statements, Dr. Nolker indicated that he believed Plaintiff's issues were severe enough to preclude employment (Tr. 258, 292). In March 2004, Plaintiff reported pain in the right scapular area, in the left hip, and in the right ankle (Tr. 258, 292). He noted her history of scoliosis. Plaintiff had complaints of pain in the right ankle and mid forefoot, but had no redness or swelling (Tr. 258, 292). Plaintiff also complained of right flank rib cage area discomfort which was not aggravated by any particular activity. Dr. Nolker administered an injection. He also noted that Plaintiff was in no acute distress (Tr. 290).

### *B. Administrative Hearing*

Both Plaintiff and her husband testified at Plaintiff's hearing. The ALJ found a discrepancy between Plaintiff's subjective complaints and the objective medical findings, and therefore, found Plaintiff only partially credible. For instance, Plaintiff testified that

she had a retained pain level of 9 to 10 on a 10-point scale (Tr. 36, 337). However, multiple treatment notes stated that she presented in no acute distress (Tr. 36, 213-14, 228, 290, 292). Additionally, Dr. Hendler found that Plaintiff exhibited significant symptom magnification (Tr. 36, 230). Plaintiff testified that she experienced side-effects from her medication, a fact not mentioned in her medical records (Tr. 36, 337, 344, 347-48).

Plaintiff also alleged that she had to lie down often throughout the day to reduce pain, a fact not reflected in her treatment notes (Tr. 36, 341-42, 345). She testified that she experienced muscle spasms in her back, yet physical examinations revealed no evidence of such spasms (Tr. 36, 346). Furthermore, Plaintiff testified that she experienced depression and memory problems due to pain, yet her treatment records reported normal cognitive and mental status findings and her treating physician records do not report such complaints (Tr. 36, 228, 340-41, 348, 350). Additionally, on disability questionnaires Plaintiff stated that she was a full-time mom caring for four young children and that she performed a substantial range of household chores.

These questionnaire responses conflict with Plaintiff's testimony that she performed few household activities (Tr. 36, 103, 122-27, 339-41). Plaintiff also testified that she still experienced intense, ongoing pain in her hip (Tr. 345-46). However, Plaintiff had previously admitted to Dr. Hendler, as well as to her treating orthopedist and physical therapists, that the surgery helped decrease her overall pain. Plaintiff does not argue that the ALJ improperly analyzed her credibility or failed to give her testimony the proper weight.

*C. The ALJ's Decision*

The ALJ found that Plaintiff had a combination of severe impairments, but did not have a combination of impairments listed in or medically equal to one contained in 20 CFR § 404, Subpart P, Appendix 1, Regulation No. 4 (Tr. 40). Additionally, the ALJ found that Plaintiff's impairments would not preclude her from performing her former work as a cashier (Tr. 41). Thus, the ALJ found that Plaintiff was no longer entitled to disability benefits due to medical improvement.

## II. DISCUSSION

Once a claimant has been awarded benefits, the Commissioner bears the burden of demonstrating that benefits should be terminated. "If the Government wishes to cut off benefits due to an improvement in the claimant's medical condition, it must demonstrate that the conditions which previously rendered the claimant disabled have ameliorated, and that the improvement in the physical condition is related to claimant's ability to work." Nelson v. Sullivan, 946 F.2d 1314, 1315 (8th Cir. 1991). "The decision concerning whether or not an individual's condition has improved is primarily a factual inquiry, which so often depends upon the credibility to be given to the various witnesses, a responsibility particularly given to the trier of fact. As a result, if substantial evidence supports the Secretary's position then it must be upheld." Id. at 1316 (citations omitted). "Substantial evidence is evidence which reasonable minds would accept as adequate to support the Secretary's conclusion. [The Court] will not reverse a decision simply because some evidence may support the opposite conclusion." Mitchell v. Shalala, 25 F.3d 712, 714 (8th Cir. 1994) (citations omitted).

The record contains substantial evidence to support the ALJ's conclusion that Plaintiff is not as limited now as she was in 2000. In particular, Plaintiff underwent left total hip replacement surgery on March 31, 2003 (Tr. 198-209, 216), and according to treatment notes, she tolerated the procedure well (Tr. 198). Additionally, rehabilitative therapy and follow-up examinations showed substantial progressive interval improvements in range of motion, motor strength, and ambulation (Tr. 214).

The ALJ found that Plaintiff's medical evidence demonstrated a history of congenital hip dysplasia with resultant development of mild lumbar scoliosis, status-post total left hip replacement surgery with residual degenerative joint disease; a history of left knee sprain, trigger fingers of the long and ring fingers of the left hand; and chronic anemia. Pursuant to the sequential evaluation process provided by 20 C.F.R. § 404.1594(f), the ALJ first found that Plaintiff had not engaged in substantial gainful activity since the date the Administration found that her disability had ceased. The ALJ then determined that Plaintiff's combined impairments did not meet the severity of any impairment set for in Appendix 1, Subpart P, Regulation No. 4 (Tr. 40).

5

Next, the ALJ evaluated whether Plaintiff had experienced "medical improvement," defined as "any decrease in the medical severity of the impairment(s) that was present at the time of the most recent favorable medical determination that found the person was disabled or continued to be disabled." 20 C.F.R. § 404.1594(b)(1). Additionally, the medical improvement must be related to the claimant's ability to do work and result in an increase in functional capacity to do basic work activities, considering only the impairment(s) present at the time of the most recent favorable medical determination. The ALJ, therefore, determined that July 31, 2000, Plaintiff's most recent favorable medical determination, served as the comparison point for determining whether there had been medical improvement. The ALJ stated that Plaintiff's work at Blockbuster just prior to surgery strongly suggested a capacity to stand and walk at a level significantly greater than was found by the Administration's 2000 disability determination.

The ALJ also considered Plaintiff's more recent and continuing physical complaints. He noted that in 2004, Plaintiff continued to undergo chiropractic manipulation therapies and reported on and off again episodes of pain. Also, he considered her complaints of rights shoulder pain and left ankle pain, but noted that physical examinations revealed relatively normal functioning. He additionally noted Plaintiff's trigger finger syndrome, but found that her symptoms responded well to treatment. The ALJ then concluded that Plaintiff had experienced significant medical improvement, particularly regarding her ability to stand and walk and that such improvement was related to her ability to perform work (Tr. 34).

In the next step of the sequential process, the ALJ considered whether Plaintiff's combined impairments, including those not present at the time of the comparison point decision, were "severe" under 20 C.F.R. § 404.1521. The ALJ found Plaintiff's impairments to be "severe" because they imposed a significant limitation on Plaintiff's ability to perform basic work-related activities. Therefore, the ALJ next evaluated whether Plaintiff retained the residual functional capacity ("RFC") to perform the requirements of any of her past relevant work. The ALJ noted that Plaintiff had performed substantial gainful activity within the light exertional level by working as a

cashier at a cafeteria an average of about 21 hours per week for at least a ten month period in 2002.  The ALJ found that such work inherently required substantial standing and/or walking at a level greater than the Administration found her capable of in the initial disability determination.  Additionally, Plaintiff earned considerable wages (though not enough to be considered substantial gainful activity) during her employment at Blockbuster in 2003.  The ALJ concluded that Plaintiff's continued performance of substantial gainful activity within the light exertional level in 2002 very strongly suggested her retained capacity for a significant range of light exertional work, and did not support the "extreme" degrees of symptoms and limitations that Plaintiff and her husband alleged (Tr. 35-36).

Plaintiff contends the ALJ failed to accord proper weight to the reports of Dr. Nolker, Plaintiff's treating physician, stating his belief that Plaintiff's issues were severe enough to preclude employment (Tr. 258, 292).  However, an ALJ is justified in discrediting some of a treating physician's opinions if they are inconsistent with other evidence in the record.  See Weber v. Apfel, 164 F.3d 431, 432 (8th Cir. 1999). "'Although a treating physician's opinion is generally entitled to substantial weight, such opinion does not automatically control, since the record must be evaluated as a whole.'" Wilson v. Apfel, 172 F.3d 539, 542 (8th Cir. 1999) (quoting Cruze v. Chater, 85 F.3d 1320, 1324-25 (8th Cir. 1996)).

The ALJ acknowledged that a treating physician's medical opinion on the issue of the nature and severity of an impairment is entitled to special significance.  In fact, when such an opinion is supported by objective medical evidence and consistent with other substantial evidence of record, it is entitled to controlling weight.  However, any opinion that a claimant is "disabled" or "unable to work" is not a medical opinion, but rather, is an administrative finding reserved to the Commissioner.  See Ellis v. Barnhart, 392 F.3d 988, 994 (8th Cir. 2005).  Therefore, such a statement cannot be given controlling weight, but must instead be carefully considered to determine the extent to which it is supported by the evidence of record as a whole or contradicted by persuasive evidence.

The ALJ found that controlling weight could not be given to the "identical and conclusory" statements provided by Dr. Nolker in June 2005 and December 2005 (Tr.

7

37). The ALJ noted Dr. Nolker's admission that his opinion was influenced in large part upon Plaintiff's subjective report that she experienced no pain relief from the total hip replacement surgery. However, such was not consistent with the follow-up orthopedic and physical therapy records that showed Plaintiff's admissions of significant pain relief, the chiropractic notes that reflected Plaintiff's repeated admissions of at least intermittent pain relief, Plaintiff's admission to Dr. Hendler in November 2003, or Plaintiff's multiple admissions in disability questionnaires of record that she achieved significant pain relief following surgery.

Furthermore, the ALJ stated that six of the eight treatment encounters with Dr. Nolker did not involve complaints related to her musculoskeletal problems, but rather, related to predominately acute and transitory illnesses. The ALJ found it significant that in the two relevant encounters, Dr. Nolker specified that Plaintiff presented in no acute distress and that physical findings were minimal. The ALJ also noted that Dr. Nolker is not an orthopedic specialist and greater weight was accorded the clinical findings and diagnostic assessments provided by treating orthopedists. The ALJ, therefore, gave proper weight to Dr. Nolker's opinion.

The ALJ also did not act improperly by giving significant weight to the findings, diagnostic assessments, and medical opinion of Dr. Hendler. He is a board-certified rehabilitative medicine specialist and therefore maintains expertise regarding work-related limitations arising from physical impairments. His finding that Plaintiff was capable of standing and walking at least two, but less than six hours during the workday, was based on direct physical examination of Plaintiff and review of her previous medical records. Likewise, it was not improper for the ALJ to give significant weight to the assessments and medical opinions of Maria Legarda, M.D., and Timothy Link, M.D., the state agency medical consultants. Both doctors are "acceptable medical sources" under the regulations. Further, both have specific expertise regarding evaluation of physical impairments under the disability programs administered by the Administration.

These doctors found that Plaintiff retained the physical RFC for a significant range of light exertion and that she was capable of standing and walking at least two

8

hours during the course of a normal workday. Additionally, the ALJ noted that Dr. Legarda's and Dr. Link's opinions were consistent with and supported by objective and clinical orthopedic and physical therapy notes, the findings and opinion of Dr. Hendler, and the evidence of record as a whole (Tr. 38).

Finally, the ALJ considered the testimony of Marianne K. Lumpe, M.A., an impartial vocational expert. Ms. Lumpe classified Plaintiff's vocationally relevant past work as cashier II (light/unskilled). The ALJ then asked a hypothetical question setting forth Plaintiff's age (38, a "younger individual"), education (high school graduate), past relevant work experience (unskilled), and residual functional capacity. The vocational expert explained that such a person retained the capacity to perform the requirements of Plaintiff's past relevant work as a cashier II.

### III. CONCLUSION

For the foregoing reasons, the Court finds that substantial evidence on the record as a whole supports the ALJ's determination that Plaintiff has experienced medical improvement that affects her ability to work, and that Plaintiff's present functional abilities permit her to perform work in the national economy. Accordingly, the Commissioner's final decision to terminate Plaintiff's benefits is affirmed.

IT IS SO ORDERED.

/s/ Ortrie D. Smith
ORTRIE D. SMITH, JUDGE
DATE: October 16, 2007    UNITED STATES DISTRICT COURT